UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA K. LONG, a single individual,<br><br>Plaintiff,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY, DOES I-X,<br><br>Defendants. | Case No. C19-568-RSL<br><br>ORDER DENYING MOTION TO AMEND SCHEDULING ORDER AND GRANTING MOTION TO STRIKE |

This matter comes before the Court on plaintiff Sandra K. Long's "Motion to Amend Scheduling Order and Allow Filing of Plaintiff's First Amended Complaint" (Dkt. # 55) and plaintiff's "Motion to Strike" contained in her reply brief (Dkt. # 59). Having reviewed the parties' submissions and the remainder of the record, the Court finds as follows:

### I. DISCUSSION

**A. Motion to Strike**

As a threshold matter, plaintiff moves in her reply brief to strike defendant USAA Casualty Insurance Company's response brief (Dkt. # 57) because it (1) was filed late and (2) is overlength due to the use of less-than-double-spacing. See Dkt. # 59 at 1-2.

**1. Late Filing**

Plaintiff argues that as her motion was filed on Monday, October 26, 2020 and noted for Friday, November 13, 2020, defendant's response was required to be filed on Monday, November 9, 2020, and was therefore late when filed on Wednesday, November 11, 2020. See

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 1

Dkt. # 59 at 1 (citing Local Rules W.D. Wash. LCR 7(d)(3)). Defendant argues that plaintiff's motion to amend the scheduling order is a motion for relief from a deadline, which is a second Friday motion requiring response by the Wednesday prior to the note date or next day that is not a legal holiday. Defendant therefore contends that its response brief, which was filed on a Wednesday legal holiday, was not only timely, but a day early. See Dkt. # 61 at 1-2 (citing Local Rules W.D. Wash. LCR 6, LCR 7(d)(2)). Defendant further argues that plaintiff initially filed her motion as a second Friday motion and changed the noting date only as a professional courtesy to defendant's counsel due to scheduling conflicts. See Dkt. # 61 at 2; Dkt. # 62-1 at 1.

Combined requests for relief are subject to the longer of the applicable noting dates. Standing alone, plaintiff's motion to amend the scheduling order would be a motion for relief from a deadline and therefore a second Friday motion. However, plaintiff's motion also contains a request to allow filing of a first amended complaint and is therefore a third Friday motion. See Local Rules W.D. Wash. LCR 7(d)(2)–(3). Plaintiff's initial error in setting the note date does not change this result, regardless of plaintiff's motivations for correcting the error. The Court finds that defendant's response brief was due on Monday, November 9, 2020, and was untimely when filed on Wednesday, November 11, 2020. The Court therefore grants plaintiff's request to strike defendant's response brief in its entirety.

**2. Overlength Brief**

Plaintiff argues that defendant's response brief is overlength because defendant utilized reduced line spacing to fit extra lines of text onto each page. See Dkt. # 59 at 1-2. Defendant does not rebut this contention. The Court's local rules provide that response briefs shall not exceed twelve pages and must be double-spaced. Local Rules W.D. Wash. LCR 7(e)(3), LCR 10(e)(1). While defendant's response brief is less than twelve pages, it appears to utilize less-than-double-spacing. According to the Court's formatting adjustments, defendant's response brief would breach thirteen pages if it were formatted according to the local rules. The Court may refuse to consider any text that is not included within the page limits. Local Rules

W.D. Wash. LCR 7(e)(6).  Accordingly, the Court strikes page twelve of defendant's response brief as exceeding the page limitation.

**B. Motion to Amend Scheduling Order and Allow Filing of Plaintiff's First Amended Complaint**

The deadline for amending pleadings was February 5, 2020.  Dkt. # 22 at 1.  On October 26, 2020, plaintiff filed a motion to amend its complaint to assert claims sounding in insurer bad faith purportedly stemming from the July 27, 2020 deposition of Sandra Sausman, defendant's designee to testify on behalf of the company pursuant to Rule 30(b)(6).  Dkt. # 55 at 2.

Under Rule 16(b)(4), case management deadlines established by the Court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Once the district court files a pretrial scheduling order pursuant to Rule 16 that establishes a timetable for amending pleadings, Rule 16's standards control.  Branch Banking & Tr. Co. v. D.M.S.I., LLC, 871 F.3d 751, 764 (9th Cir. 2017) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992)).  "The good cause standard of Rule 16(b) primarily considers the diligence of the party seeking the amendment.  If that party was not diligent, the inquiry should end."  Id. (quoting Johnson, 975 F.2d at 609).

Once a party has cleared the Rule 16(b) "good cause" hurdle, the inquiry shifts to the more liberal standard of Rule 15(a).  Although Rule 15(a) provides that leave to amend "shall be given freely when justice so requires," it "is not to be granted automatically."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013), aff'd sub nom. Oneok, Inc. v. Learjet, Inc., 575 U.S. 373 (2015) (quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990)).  The Court considers the following five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."  Id. (quoting Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)).

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 3

Plaintiff's proposed amended complaint includes two categories of new factual allegations that plaintiff contends support her new claims for bad faith and violation of the Washington Insurance Fair Conduct Act:

1. Defendant destroyed the first twelve years of plaintiff's underwriting record and concealed this fact from plaintiff. See Dkt. # 55-2 at ¶¶ 3.26, 3.27 (proposed amended complaint); see also Dkt. # 55 at 2-3 (citing Dkt. # 47-2 at 19, 24-26, 36, 37-38, 42; Dkt. ## 47-10, -11, -12, -13, -14, -15) (stating that defendant actively hid from plaintiff that, as part of its routine document destruction process, it destroyed the first twelve years of her underwriting file, which could have shown that she was candid about her log home in 1995 at the inception of the policy); Dkt. # 59 at 3 (citing Dkt. # 47-2 at 9, 19, 24-26, 35-36, 37-42) (stating defendant destroyed plaintiff's original application where she described her home as built with cedar logs and hid the fact that it had destroyed her application until Ms. Sausman's deposition).

2. Defendant failed to investigate plaintiff's contention that she told defendant on multiple occasions that her home was log construction. See Dkt. # 55-2 at ¶ 3.28 (proposed amended complaint); see also Dkt. # 55 at 2 (citing Dkt. # 47-2 at 9, 19, 35-36, 38-41) (stating defendant made no real attempt to validate plaintiff's contention that she had told defendant on multiple occasions that she had a log home); Dkt. # 59 at 3 (citing Dkt. # 47-2 at 10, 20-21, 37, 47) (stating that the program defendant previously used for underwriting and determining coverage did not have a "log home" option, and therefore likely forced a low-level employee to select "cedar siding" or "cedar clapboard," resulting in plaintiff being underinsured).

Plaintiff also highlights numerous facts as newly disclosed in Ms. Sausman's deposition that do not directly tie to the additional facts that plaintiff seeks to allege in the proposed amended complaint. These include that: (i) unbeknownst to plaintiff, defendant's call center employees were inadequately trained, see Dkt. # 59 at 3 (citing Dkt. # 47-2 at 31-33, 53-54, 55, 56-57) (stating that plaintiff relied on defendant's call center employees to provide her with

appropriate coverage and benefits had no way of knowing prior to Ms. Sausman's deposition that she was speaking to inadequately trained low-level employees or that defendant put this practice in place to save money); Dkt. # 55 at 2 (citing Dkt. # 47-2 at 53-54, 55, 56-57) (stating that defendant is a "direct writer" and that this means it has delegated the tasks of selling and explaining insurance to "hourly employees at a call center who are not trained to interpret or even understand insurance policies"); (ii) defendant foregoes inspections of lower-value homes to save money, see Dkt. # 55 at 2 (citing Dkt. # 47-2 at 13-14, 15, 16, 31-33) (internal citations omitted) (stating that defendant inspects only homes with a value of $650,000 or greater and for lower-value homes, relies on call center employees to capture the characteristics of the home to save money on inspections); and (iii) defendant acknowledges it has a responsibility to annually update replacement cost, see Dkt. # 59 at 3 (citing Dkt. # 47-2 at 29, 30, 34) (stating that Ms. Sausman's deposition was the first time that defendant acknowledged that it had "the responsibility of updating the replacement cost [of each insured home] annually," and that, "once USAA took on such a responsibility, it was obligated to do it competently and carefully.").

### 1. Amendment Based on Destruction of Underwriting File

Plaintiff has not met Rule 16(b)'s good cause standard in seeking to amend the complaint based on her contention that defendant destroyed the first twelve years of her underwriting file and hid this fact from her because she has failed to show diligence. The record shows that in July 2017, defendant called plaintiff regarding her request for "every renewal packet since policy inception," and plaintiff confirmed that she agreed to receive pages from 2006 onwards. See Dkt. # 47-8 at 9; but see Dkt. # 47-5 at 37 (plaintiff testifying that she did not recall whether she spoke to someone at USAA about this request for paperwork). While plaintiff declared that defendant failed to supply her original application and any documentation regarding her phone calls with defendant about having a log home despite her repeated requests, Dkt. # 45 at ¶ 17, plaintiff also testified that defendant provided her with some paperwork in response to her request, but that it "wasn't a lot." Dkt. # 47-5 at 38. As the record shows that plaintiff was on

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 5

notice regarding the longevity of the records as far back as 2017 via the limited contents of what defendant shared with her, it does not indicate diligence that plaintiff delayed until Ms. Sausman's post-amendment-deadline deposition to further investigate why the documents were missing and state a claim on these grounds.

### 2. Amendment Based on Failure to Investigate

Plaintiff argues that defendant failed to investigate her contention that she told defendant on multiple occasions that her home was log construction and provides the complimentary fact that defendant's prior software did not include an option for log homes.

Regarding the investigation, the record shows that defendant's internal log documenting its investigatory process was in plaintiff's possession by at the latest May 5, 2020, which is when it was filed as an exhibit to defendant's initial motion for summary judgment.  See Dkt. # 32-8 at 1.  It is also clear from plaintiff's line of questioning in Ms. Sausman's deposition that plaintiff's counsel was aware that this document summarized defendant's investigation and that the issue arose long before litigation.  See Dkt. # 47-2 at 35 ("[B]y full disclosure issue, I mean Ms. Long says she told people at USAA in these phone calls, I have a log home.  Now, that obviously came up way before litigation.  It came up in the claim . . . . [W]hen we look at the claims file, they say underwriting investigated it . . . . And it's got kind of a cursory investigation I would call it in the underwriting file.").  Defendant's investigation (or lack thereof) was therefore not newly revealed in Ms. Sausman's deposition.

The Court recognizes that May 5, 2020 is after the February 5, 2020 deadline to amend the complaint and that revelation of a fact after this deadline may show good cause under Rule 16(b).  See, e.g., Branch Banking & Tr. Co., 871 F.3d at 765 (finding no good cause where proposed defenses and counterclaims were based on an agreement known to defendants before the deadline to amend had passed).  However, showing good cause under Rule 16(b) is only a threshold step before proceeding to an analysis under Rule 15(a), and plaintiff's request to amend on this ground fails under the Rule 15(a) standard.

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 6

One factor the Court assesses to determine whether to grant leave to amend under Rule 15(a) is undue delay. See Jackson, 902 F.2d at 1388. Even accepting, *arguendo*, plaintiff's arguments that she acted diligently and without undue delay in bringing the motion to amend because she engaged in a discovery conference with defendant on July 21, 2020, conducted Ms. Sausman's deposition on July 27, 2020, propounded a new set of discovery requests on defendant on August 4, 2020 based on Ms. Sausman's deposition and relating to the claims she seeks to add here, received inadequate responses from defendant on September 4, 2020, was constrained to wait for Ms. Sausman's deposition signature page until October 14, 2020 even though it was due on September 10, 2020, and conferred with defendant's counsel to attempt to obtain a stipulation to amend and submitted the Insurance Fair Conduct Act 20 Day Notification Sheet and the associated cover page on October 15, 2020, before finally submitting this request to amend on October 26, 2020, see Dkt. # 55 at 3; Dkt. # 59 at 4-6; Dkt. # 60-2 at 2, the nearly three-month delay between May 5, 2020 and July 21, 2020 is unexplained and unjustified. Cf. Jackson, 902 F.2d at 1388 ("Even accepting appellants' arguments that they did not have all of the requisite facts until August 1987, did not fully analyze them until October 1987, and added new attorneys to represent them, the delay in filing an amended complaint from October 1987 to May 1988 is otherwise inexplicable and unjustified."). The Court declines to grant plaintiff leave to amend under Rule 15(a) due to her undue delay.

Regarding defendant's software inadequacy, Ms. Sausman's deposition appears to be the first mention on the record of the fact that defendant's prior software did not include an option for log homes. However, plaintiff was aware that defendant had miscategorized her home by November 9, 2016, when she informed defendant of this issue. See Dkt. # 38-5 at 7. It therefore does not indicate diligence sufficient to overcome Rule 16(b)'s good cause threshold that plaintiff failed to investigate the reason for this discrepancy in the more than three years before the deadline to amend.

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 7

### 3. Amendment on Other Grounds

Plaintiff has failed to establish why the third category of facts – those that plaintiff highlights as newly disclosed in Ms. Sausman's deposition but which do not clearly tie to the new facts she seeks to allege in the amended complaint – support a request to amend the complaint.

First, none of these facts are alleged in the proposed amended complaint. While not every supporting fact need be alleged in the complaint, plaintiff's decision to exclude these facts indicates that plaintiff does not consider them to be necessary to cause the proposed amended complaint to contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Second, plaintiff has failed to demonstrate diligence in developing many of these facts. Regarding plaintiff's claims that defendant's call center employees were inadequately trained, plaintiff testified that she had called defendant on many occasions dating back to 1995. See, e.g., Dkt. # 47-5 at 15, 17, 21, 22, 25. There was no reason for plaintiff to delay inquiry into the training of call center employees until Ms. Sausman's deposition. Regarding plaintiff's claim that defendant foregoes inspection of lower-value homes to save money, plaintiff testified that defendant did not inspect her home at the inception of her policy in 1995. Dkt. # 47-5 at 17. Plaintiff therefore had personal knowledge that defendant did not inspect her home for twenty-five years before the request to amend the complaint. It does not demonstrate diligence that she waited until Ms. Sausman's deposition to inquire into defendant's general inspection policies and practices. Regarding plaintiff's claim that Ms. Sausman acknowledged that defendant has a responsibility to update home replacement costs annually, plaintiff was free to develop the duty of care through her own evidence at any time. Further, Ms. Sausman's testimony regarding this standard was not out of the blue. Rather, this standard was suggested by plaintiff's counsel and Ms. Sausman confirmed upon questioning. See Dkt. # 47-2 at 29 ("The question, just to repeat, is if USAA, as we see here, is going to take on the responsibility of updating the replacement

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 8

cost every year, once it takes on that responsibility, would you agree that USAA has to be competent and careful in doing so; would you agree or not?").

Because plaintiff had knowledge of key facts supporting her proposed new claims long before Ms. Sausman's deposition, plaintiff has not shown that she was diligent, and has therefore not shown good cause for an extension of the deadline to amend the complaint. To the extent that plaintiff has shown good cause in relation to certain allegations, plaintiff exhibited unjustified and therefore undue delay in pursuing amendment of the complaint.

## II. CONCLUSION

For all of the foregoing reasons:

1. Plaintiff's motion to strike contained in her reply brief (Dkt. # 59) is GRANTED. Defendant's response brief (Dkt. # 57) is stricken in its entirety as a late filing, and page twelve of defendant's response brief (Dkt. # 57 at 12) is further stricken as overlength.

2. Plaintiff's motion to amend scheduling order and allow filing of plaintiff's first amended complaint (Dkt. # 55) is DENIED.

DATED this 21st day of January, 2022.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION TO AMEND
SCHEDULING ORDER AND GRANTING MOTION
TO STRIKE- 9