UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA K. LONG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. C19-0568-RSL<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant's Motion for Summary Judgment." Dkt. # 37. Having reviewed the parties' memoranda, declarations, and exhibits, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:[1]

## I. BACKGROUND

In 1995, plaintiff purchased homeowners insurance from defendant for her new home, specifically describing the home as a Pan Abode cedar log home in Enumclaw, Washington. Dkt. # 1-1 at ¶ 3.6; Dkt. # 45 at ¶ 10; Dkt. # 47-5 at 15. Defendant sent plaintiff "policy packets" each year before her insurance policy renewed for the following term. Dkt. # 47-2 at 20. The

---

[1] Plaintiff requests oral argument. Dkt. # 44. The Court concludes that oral argument is unnecessary to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4). The request is DENIED.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

packets summarized key information from the full policy, namely, the home's characteristics, the applicable coverage amounts, and limits of liability. *See, e.g.*, Dkt. # 38-1 at 36-39. A full copy of the policy was available on defendant's website and by mail upon request. Dkt. # 47-2 at 24; Dkt. # 47-5 at 82.

Pursuant to its internal policies, defendant did not undertake a physical inspection of plaintiff's home because the property value was less than $650,000. Dkt. # 47-2 at 13-14. Instead, it relied on plaintiff's description of the home (and its representative's ability to accurately capture that description) when calculating what it would cost to rebuild the home after a loss. Dkt. # 47-2 at 14. As mentioned above, there is evidence that plaintiff identified her home as a cedar log home when applying for insurance in 1995. There is also evidence that she repeated that information in telephone calls with USAA representatives in subsequent years. Dkt. # 45 at ¶ 11; Dkt. # 47-5 at 49 (stating that plaintiff told USAA on at least five occasions that she had a log home).[2]

The Homeowners Policy Packet plaintiff received for the 2009-2010 term announced various revisions to the policy, including the addition of an endorsement for automatically increasing the dwelling limit coverage "to reflect increased rebuilding cost" and to help "keep your home insured for its proper value." Dkt. # 47-7 at 7. The dwelling limit was adjusted from

---

[2] Defendant has no basis for disputing plaintiff's assertion for the period between 1995 to 2007 because it purged the underwriting file of all documents associated with plaintiff's property for that time frame. Dkt. # 47-2 at 19 and 24. Defendant has not produced any call logs or underwriting file entries for the period between 2007 and the fire loss.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2

$178,000 in policy year 2008-2009 to $194,000 in policy year 2009-2010. Dkt. # 38-1 at 2-3. Defendant does not dispute that it voluntarily undertook the responsibility to update the replacement cost on an annual basis and that it had an obligation to do so in a competent and careful manner. Dkt. # 47-2 at 30. The company USAA was using to calculate replacement costs at the time, Marshall & Swift/Boeckh ("MSB"), had no ability to estimate the replacement cost of a log home, however. Dkt. # 47-2 at 20-21.

In January 2010, USAA conducted a telesurvey regarding the characteristics of plaintiff's home. The computerized report regarding plaintiff's responses includes the following entries:

**Main**

    Construction Type:  Standard

**Building Components**

    Ceilings: Wood Ceiling                     100

    Exterior Walls: Wood Siding                100

    Interior Walls: Plywood only Wal [sic]   100

    Wall Coverings: Solid Wood Paneling   100

Dkt. # 38-3 at 2. All policy packets from 2010 forward were apparently based on the computerized report and mischaracterized plaintiff's home. Dkt. # 38-1 at 7, 11, 15, 19, 23, 27, 31, 35, 39.[3] Between 2010 and 2015, the renewal declaration pages described the home as being

---

[3] Although defendant has produced the first page of the renewal declarations for the 2008 and 2009 policy terms, Dkt. # 38-1 at 2-3, the declarations do not include a statement regarding the home's characteristics.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

clad with "Wood Siding" and having "Plywood Only" interior wall partitions and "Solid Wood Paneling" interior wall coverings. *Id.* at 7, 11, 15, 19, 23, and 27. Each of these declarations stated:

> We can calculate the minimum rebuilding cost of your home based on your home characteristics, but only you can decide if this is enough coverage. Our estimates are based on average construction costs and labor costs for geographic areas and may not reflect the unique features of your home or the area you live in.
>
> On the back of this page, you'll find your home characteristics. If any of the information is incorrect, the rebuilding cost may be affected, so please revise any inaccuracies by:
>
> ▪Logging on to usaa.com, selecting your policy and the Home Characteristics, or
> ▪Calling us at 1-800-531-USAA (8722)

*See, e.g.*, Dkt. # 38-1 at 6.

Plaintiff maintains that she was consistent in her description of the home, never claiming that it was stick built and always disclosing that she had a cedar log home. Dkt. # 45 at ¶¶ 14-15. When USAA continued to describe the home as having wood siding in the policy packets plaintiff received year after year, she interpreted that to mean "that was their terminology for a log home, because they would never go away from that description." Dkt. # 47-5 at 51. Plaintiff had several interactions with defendant during which she went over her policy and "ask[ed] [staff] if [she] was adequately covered." Dkt. # 47-5 at 68. Plaintiff relied on USAA to ensure that she had the right types of insurance in adequate amounts: in her view, this reliance was reasonable because she had accurately described her home, defendant promised to calculate the minimum replacement costs based on that description, and she specifically inquired about the

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 4

adequacy of coverage. Dkt. # 45 at ¶ 16.

In March 2016 (the year of the fire loss), defendant notified plaintiff that it had changed its replacement cost calculation tool. Dkt. # 38-4 at 2. The tool, produced by Xactware Solutions, Inc., provided a new estimated home rebuilding cost of $125,000 for plaintiff's home, which was considerably lower than the MSB estimates and the established dwelling coverage limit of $194,000. *Id.* The letter stated that defendant would not decrease plaintiff's coverage without her permission and that before deciding to decrease her coverage, plaintiff should review and update her home characteristics to ensure the new estimate was based on accurate information. *Id.* Defendant did not reduce plaintiff's coverage, and plaintiff, who does not recall seeing the letter, did not authorize any decrease. Dkt. # 47-5 at 80-81. The Homeowners Policy Packet accompanying the 2016-2017 policy again announced that defendant had switched to Xactware's services. Dkt. # 38-2 at 5. Defendant warned that the insured "may . . . notice some differences in your home characteristics" and that the resulting estimate might differ. *Id.* Unlike MSB, the Xactware software has options to address log homes. Dkt. # 47-2 at 22 at 21. The description of plaintiff's home did, in fact, change, in large part becoming more generic, *see* Dkt. # 38-2 at 11 (labeling the "General Shape and Style," the "Exterior Finishes & Features" and the "Interior Finishes & Features" as "Standard"), but also specifying that the formerly non-descript "Wood Siding" of the exterior walls was actually "Siding – Cedar (Clapboard)," *id.*. The dwelling limit remained $194,000 per the March 2016 letter. Dkt. # 38-2 at 6. Plaintiff did not contact USAA to correct the 2016-2017 home characteristics, Dkt. # 47-5 at 88, believing

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

that "[s]ince [she] had always told USAA that [she] had a cedar log home, when [she] saw the reference to cedar clapboard, [she] thought this was how USAA categorized [her] cedar log Home."), Dkt. # 45 at ¶ 14.

On November 6, 2016, a fire destroyed plaintiff's home. Dkt. # 1-1 at ¶ 3.1. That same day, plaintiff called defendant to open a claim. Dkt. # 47-5 at 25. Defendant sent a letter of acknowledgement within two hours. Dkt. # 38-5 at 2; Dkt. # 38-6 at 2-3. Two days after the fire, Rick Aufrecht, the primary adjuster assigned to plaintiff's property claim, conducted a site investigation. Dkt. # 38-5 at 6. During the investigation, plaintiff informed Aufrecht that the home was made of cedar logs, not sided with cedar. *Id.* at 7. She also stated that she had told USAA "numerous times" that it was a log home, that defendant nevertheless kept calling it cedar-sided, and that she did not understand why they would not update the information. *Id.* She reported that "USAA just mailed out [a] letter saying she should lower her coverages" but "she felt that lowering it would not be right so [she] did not respond." *Id.* Aufrecht corrected plaintiff's home characteristics in Xactware.[4] *Id.* at 8-9. Four days after the fire, plaintiff hired a public adjuster, Richard Maib, to handle her claim: she "had no issue with USAA or [its] adjusters, but [she] just didn't want to deal with handling of the claim." *Id.* at 10 and 14.

Based on the corrected home characteristics, Aufrecht determined the estimated rebuilding cost of the home was $302,175.04, whereas her dwelling policy limit was $194,000.

---

[4] Although defendant updated plaintiff's home characteristics in the program, it did not increase her coverage limits.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

*Id.* at 15. Aufrecht noted that "[t]he amount of insurance was determined by information given by the member. Nothing was found to indicate that the member misrepresented the facts of the house." *Id.* Payment of the dwelling policy limit was made on December 1, 2016. *Id.* at 17.[5]

On March 18, 2019, plaintiff filed suit in King County Superior Court, alleging negligence, a Consumer Protection Act ("CPA") violation, and breach of contract. Dkt. # 1-1 at 6-8. On April 15, 2019, defendant properly invoked this Court's jurisdiction under 28 U.S.C. § 1332(a) and removed the action pursuant to 28 U.S.C. § 1446(b). Dkt. # 1 at 2.

## II. DISCUSSION

### A. Threshold Issues

Two threshold issues must be addressed before defendant's summary judgment motion can be resolved. The first issue is the admissibility of plaintiff's expert testimony. Dkt. # 47-16. The second issue is whether plaintiff may pursue additional claims under the Washington Insurance Fair Conduct Act ("IFCA") and for insurer bad faith. Dkt. # 44 at 2.

### 1. Expert Witness Testimony

The Court declines to consider the untimely expert declaration of David Mitchell in support of plaintiff's negligence claims. *See* Dkt. # 47-16. Expert reports were due by February 5, 2020. Dkt. # 22. Plaintiff did not submit or disclose her expert's declaration until October 8,

---

[5] The payment was reissued at plaintiff's request in August 2017. *Id.* at 18-19. Defendant also paid an additional $48,500 in Home Protector Coverage, $9,700 for Excess Debris Removal Coverage, and $9,700 for Building Ordinance or Law Coverage. Dkt. # 37 at 9; Dkt. # 38-5 at 21-22. Additionally, defendant paid $145,500 towards plaintiff's personal property claim. *Id.*

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7

2020 -- over eight months after the report was due. Dkt. # 47-16; Dkt. # 50 at 8.

Rule 26 requires parties to disclose all expert evidentiary material that may be relied upon at trial at the times directed by the Court. Fed. R. Civ. P. 26 (a)(2)(D). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial [or in support of a motion] of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also* Fed. R. Civ. P. 37(c)(1). This rule excludes untimely expert witness testimony unless the "failure to disclose the required information is substantially justified or harmless." *Id.* Plaintiff has not provided any justification for her failure to disclose her expert in a timely manner, nor has she attempted to show that her error was harmless. *See Yeti by Molly Ltd.*, 259 F.3d at 1107 (the burden is on the party facing sanctions under Rule 37(c)(1) to prove harmlessness).

Plaintiff argues that because pretrial deadlines were stricken on May 6, 2020, amendments to her complaint, *infra* Part A.2., (and, by extension, late expert reports) should be permitted. Dkt. # 44 at 2. But the Order striking pretrial deadlines (Dkt. # 33) was entered three months after expert reports were due. The Order only impacted "remaining pretrial deadlines." *Id.* It did not retroactively cure plaintiff's failure to timely submit her expert's declaration. Therefore, the Court declines to consider the Mitchell declaration in ruling on this motion.

**2. Additional Claims**

In addition to the claims asserted in her complaint, plaintiff's response brief also discusses two additional causes of action. Specifically, plaintiff seeks to add IFCA and bad faith

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

claims through amendment of the complaint and argues the merits of those claims in her response brief. Dkt. # 44 at 2. The Court has already considered and rejected plaintiff's motion to amend her complaint, however, Dkt. # 65, and will therefore only evaluate the claims that are properly a part of this case.

**B.     Legal Standard for Summary Judgment**

Under Rule 56, the party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that establish the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve genuine issues regarding credibility, the weight of the evidence, and legitimate inferences for the trier of fact, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 9

2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

**C.     Negligence Claim**

To prevail on a negligence claim under Washington law, plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury. . . . To prevail on summary judgment, [USAA] must establish that viewing the facts and inferences in the light most favorable to [plaintiff, plaintiff] fails to demonstrate a genuine issue of material fact as to [USAA's] negligence." *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287 (2021) (internal quotation marks and citations omitted). Plaintiff argues that disputed issues of fact remain, including (1) whether plaintiff had disclosed (and defendant failed to accurately record) that her home was made of cedar logs and (2) whether plaintiff reasonably believed that the designation of the home as "Wood Siding" and "Cedar - Clapboard" was USAA's way to refer to a cedar log home.

Taking the evidence in the light most favorable to plaintiff, the Court finds that summary judgment on the negligence claim is not warranted. The existence of a duty is a threshold question to be decided as a matter of law. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (1996). Under Washington law, there is no legal duty to act on behalf of a stranger, but "if someone gratuitously undertakes to perform a duty, they can be held liable for performing it negligently." *Burg v. Shannon & Wilson, Inc.*, 110 Wn. App. 798, 808 (2002). Here, USAA

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10

acknowledges that it undertook to calculate the minimum rebuilding cost of plaintiff's home based on its characteristics. If the jury credits plaintiff's testimony that she repeatedly informed defendant that she had a cedar log home, it could reasonably find that defendant performed this duty negligently when it repeatedly ignored or inaccurately recorded the insured's description of her home. While USAA may argue that plaintiff's own negligence contributed to the insufficiency of her insurance coverage, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." *Hendrickson v. Moses Lake Sch. Dist.*, 192 Wn.2d 269, 285 (2018) (quoting RCW 4.22.005).

USAA argues that plaintiff's claim is barred because Washington courts do not recognize a duty to advise the insured on the adequacy of coverage unless a "special relationship" exists between the insured and the insurer. Dkt. # 37 at 20. *See Lipscomb v. Farmers Ins. Co. of Wash.*, 142 Wn. App. 20, 28 (2007) ("In the insurance context, an agent does not have a duty to procure a policy that affords the client complete liability protection . . . [unless] there is a special relationship between the agent and the insured."). As described above, however, defendant affirmatively undertook to calculate the replacement cost of plaintiff's home based on the home's characteristics and must therefore exercise reasonable care in the performance of that task. That Washington law does not *sua sponte* impose a duty to calculate the appropriate dwelling coverage is of no consequence where defendant voluntarily took on the responsibility to do the calculation in a certain way. *See Shah v. Allstate Ins. Co.*, 130 Wn. App. 74, 78, 80-83

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

(2005) (permitting negligence claim based on broker's failure to accurately record the square footage of the insured property, resulting in insufficient coverage).[6]

### D. CPA Claim

Plaintiff alleges that defendant violated the CPA through its claims investigation and claims handling practices. Dkt. # 44 at 20-23. A CPA claim requires a plaintiff to establish: (1) an unfair or deceptive act or practice, (2) which occurs in trade or commerce, (3) impacts the public interest, (4) injures the plaintiff's business or property, and (5) is caused by the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85 (1986); *see also* RCW 19.86.020. Washington law provides a right of action to "[a]ny person who is injured in his or her business or property by a violation of" the CPA. RCW 19.86.090. "CPA claims alleging unfair insurance claims practices always meet the public interest element because RCW 48.01.030 declares that the 'business of insurance is one affected by the public interest.'" *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1238 (W.D. Wash. 2008). Defendant does not dispute that it acts in trade or commerce.

---

[6] Even if the "special relationship" test applies, there is evidence of a long-standing relationship between plaintiff and USAA, specific communications regarding her home's characteristics (which USAA repeatedly represented as being critical to its coverage calculation) and the adequacy of coverage, and reliance on USAA's expertise in calculating replacement costs. *Lipscomb*, 142 Wn. App. at 28. Like the defendants in *Peterson v. Big Bend Ins. Agency, Inc.*, 150 Wn. App. 504 (2009), defendant promised that it would use a valuation tool (first MSB, then Xactware) that involved plugging in certain details of the home's characteristics to generate a figure which approximated how much it would cost to rebuild the home. Taking the evidence in the light most favorable to plaintiff, defendant mischaracterized her home, despite her truthful and accurate disclosures, and came up with a replacement value limit that was more than $100,000 less than the actual cost to rebuild.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12

**1. Violations of Insurance Regulations**

Where a violation of any provision of WAC 284-30-330 is shown, an unfair or deceptive act or practice is established under the CPA. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn. 2d 122, 133-34 (2008). Plaintiff alleges that defendant acted unfairly or deceptively in violation of the CPA by failing to conduct a reasonable investigation into her claims. Dkt. # 44 at 22-23. Specifically, she claims the investigation process was unreasonable because it violated WAC 284-30-330(2) and (4) and because of defendant's undisclosed record retention policy.[7] Dkt. # 1-1 at ¶¶ 4.0-4.1.5.

WAC 284-30-330(2) provides that an insurer's "[failure] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" constitutes an unfair or deceptive act or practice. Plaintiff argues that defendant violated WAC 284-30-330(2) by denying that she told it the home was log when it lacked any records from her policy inception through 2007 to bolster that argument. Dkt. # 44 at 22. Regardless whether defendant discarded plaintiff's records from 1995–2007, there is no evidence that defendant failed to acknowledge or act reasonably promptly upon communications from plaintiff regarding the policy or the claim. WAC 284-30-330(2) is not a means to challenge

---

[7] In her complaint, Dkt. # 1-1 at 3, plaintiff claims that defendant violated WAC 284-30-330(2), (3), (4), (13), and 284-30-300(1), (3), and 284-30-360(1). Plaintiff appears to have abandoned most of those allegations in her response brief because she argues only that WAC 284-30-330(2) and (4) were violated. *See* Dkt. # 44 at 23. The Court declines to address her abandoned claims. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding that the plaintiff "abandoned her other two claims by not raising them in opposition to the [defendant's] motion for summary judgment").

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13

the insurer's coverage decisions or document retention policies, but rather a regulation aimed at the timeliness of an insurer's communications. The record shows defendant was both responsive and efficient in this case. Defendant opened a claim file within two hours of plaintiff filing her claim, began investigating her claim the day of the fire, sent the property adjuster to meet her within two days after the fire, completed its inspection within five days of the fire, and paid out her dwelling protection coverage limits within a month of the fire. Dkt. # 37 at 18. Even taken in the light most favorable to plaintiff, the facts and her arguments do not show a violation of WAC 284-30-330(2).

Plaintiff also alleges that defendant violated WAC 284-30-330(4), which provides that "[r]efusing to pay claims without conducting a reasonable investigation" constitutes an unfair or deceptive act or practice. Defendant did not refuse to pay a claim in this case. Rather, it paid out the full amount of the policy that was in effect at the time of the fire. Dkt. # 37 at 19. Its investigation was prompt and reasonable. Although plaintiff implies that the insurer should have reformed the policy in light of its investigation, no such duty is imposed by WAC 284-30-330(4).

Finally, plaintiff argues that defendant's investigation was unreasonable under WAC 284-30-330(4) because defendant destroyed the first twelve years of her homeowners insurance documents, records which might have supported her contention that she accurately described her home as made of cedar logs. Dkt. # 44 at 22. As set forth above, there was no refusal to pay claims in this case and, therefore, there was no violation of WAC 284-30-330(4). In addition,

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14

defendant was under no legal obligation to retain records for more than five years, much less for the twenty-plus years since the house was first insured by USAA. *See* RCW 48.17.470(2). Failure to look through records that defendant lawfully discarded pursuant to its document retention policies does not constitute an unreasonable investigation.[8] Plaintiff has not stated a viable claim under WAC 284-30-330(4).

### 2. Misrepresentation of Replacement Cost

Plaintiff contends that defendant unfairly or deceptively represented the replacement cost associated with her home when it input inaccurate information regarding the home's characteristics and provided a figure that was over $100,000 less than the actual replacement value during the 2016-2017 term. Both *Peterson* and *Shah* offer some support for such a claim, finding that misstatements regarding how the replacement costs would be calculated and the resulting inaccurate statements regarding "replacement costs" violated RCW 48.30.090. *See Peterson*, 150 Wn. App. at 520-21; *Shah*, 130 Wn. App. at 86-87. RCW 48.30.090 states that "[n]o person shall make, issue or circulate, or cause to be made, issued or circulated any misrepresentation of the terms of any policy or the benefits or advantages promised thereby, or the dividends or share of surplus to be received thereon, or use any name or title of any policy or class of policies misrepresenting the nature thereof."

---

[8] Separately, plaintiff avers that, in failing to conduct a reasonable investigation, defendant hid the fact that it destroyed her records from 1995-2007. Dkt. # 44 at 22. There is no evidence that defendant attempted to hide its record retention policy.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15

The Court finds that the appellate court's analysis in *Peterson* is not persuasive and that *Shah* is distinguishable. In *Peterson*, as in this case, plaintiff alleged that the defendant falsely represented the manner in which replacement costs would be calculated. The representations in both cases may well have been deceptive, but they do not necessarily impact the public interest unless they also violate an insurance statute or regulation. In order to fit within RCW 48.30.090, the *Peterson* court found that the insurer misrepresented the terms of the policy by providing the incorrectly-calculated replacement costs figure to the insured. 150 Wn. App. at 521. But the manner in which the replacement costs would be calculated was not a term of the policy, and the calculated coverage limit, though factually insufficient, was an accurate reflection of the policy as it was issued.[9] In *Shah*, the insurance agent represented that the policy would provide full replacement value of the home in case of loss. 130 Wn. App. at 79. This was a clear misstatement of the terms of the policy, which had a dwelling coverage limit of $307,000, far less than the market value of the home and approximately $200,000 less than the actual replacement costs. *Id.* at 78-79. Here, by comparison, USAA did not assure plaintiff that her policy would pay whatever the replacement costs turned out to be, but rather specified and highlighted the replacement cost limit in each policy packet it sent.

Plaintiff has not raised a triable issue of fact regarding her CPA claim.

---

[9] The Court recognizes that the Washington Court of Appeals rejected the trial court's similar reasoning, *id.* at 520, but the appellate court does not explain how an accurate statement regarding the amount of replacement cost coverage a policy provides is a misrepresentation of a policy term or the benefits available for purposes of RCW 48.30.090.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 16

**E. Contract Claims**

In her complaint, plaintiff alleges that defendant violated "the express or implied terms and conditions of the insurance contract and/or reasonable expectations of its insureds as to the terms and conditions of the insurance policy." Dkt. # 1-1 at ¶ 4.3.2. In opposing defendant's motion for summary judgment, however, she makes no attempt to identify any contractual provision that was breached. The Court therefore declines to address the abandoned breach of contract claim. *Jenkins*, 398 F.3d at 1095 n.4.

Plaintiff argues that defendant violated its quasi-fiduciary duty to exercise a high standard of good faith and to deal fairly with its insureds. Dkt. # 44 at 24. Specifically, plaintiff maintains that defendant (a) should have reformed the policy and increased the dwelling coverage limit once plaintiff told it that she had accurately and repeatedly described the home as made of cedar logs and (b) should have conducted a fulsome investigation before enforcing the policy limits. *Id.* In Washington, insurers have "an elevated or 'enhanced' duty of good faith which requires [them] to 'deal fairly' giving 'equal consideration' to [their] insureds." *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 794 (2001); *see also Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 916-17 (1990) ("This fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud."). The duty of insurers to act in good faith is also captured in RCW 48.01.030, which "requir[es] that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." This duty requires insurers to base refusal of coverage upon reasonable grounds rather than suspicion

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 17

and conjecture, *Safeco Ins. Co. of Am. v. JMG Rest., Inc.*, 37 Wn. App. 1, 15 (1984), and to conduct a good faith investigation before denying coverage, *Kallevig*, 114 Wn.2d at 917.

An insurer's duty to act in good faith is not based in contract, however, but rather derives from tort law. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389 (1992) ("An action for bad faith handling of an insurance claim sounds in tort."). The claim alleged in the complaint is clearly based in contract, and the Court has denied plaintiff's motion to amend the complaint to add a bad faith claim. *See* Dkt. # 1-1 at ¶¶ 4.3; Dkt. # 65. Plaintiff's claim fails on this ground alone.[10]

//

//

---

[10] Even assuming, arguendo, that plaintiff had properly alleged a bad faith claim, it would not survive summary judgment. "The tort of bad faith has been defined as a breach of the obligation to deal fairly with an insured, giving equal consideration to the insured's interests." *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329 (2000) (citing *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 385-86 (1986)). Bad faith claims "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). An insurer breaches the duty to act in good faith by "overemphasiz[ing] its own interests" at the expense of the insured. *Anderson*, 101 Wn. App. at 329. "The determinative question is [the] reasonableness of the insurer's actions in light of all the facts and circumstances of the case." *Id*. at 329-30 (citing *Kallevig*, 114 Wn.2d at 920). Plaintiff offers no support for her contentions that USAA had a duty to reform the policy or to maintain her underwriting file indefinitely. Nor has she put forth evidence suggesting that defendant overemphasized its interests at her expense.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 18

## III. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. # 37) is GRANTED in part and DENIED in part. Plaintiff's negligence claim may proceed. All other claims are hereby DISMISSED.

Dated this 2nd day of August, 2022.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 19